## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORDIA

**Case No. _____**

SYNOVUS BANK, d/b/a FLORIDA
COMMUNITY BANK, N.A.,

      Plaintiff,

vs.

LCH TRADING, INC., LCH ENGINE
REPAIR, INC. and FRANCISCO CHIRINO

      Defendants.

_____/

## COMPLAINT

Plaintiff, Synovus Bank, d/b/a Florida Community Bank, N.A., by and through its undersigned counsel, files this Complaint ("Complaint") against LCH Trading, Inc., LCH Engine Repair, Inc. and Francisco Chirino (collectively, the "Defendants").   In support of this Complaint, the Bank relies on the exhibits attached hereto, each of which are fully incorporated into this Complaint by reference, and states as follows:

## JURISDICTION AND VENUE

1.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs, and is between citizens of different states.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and the attached loan documents, which contain clauses by which Defendants consent to submit themselves to the venue and jurisdiction of this Court.

3.      This Court has personal jurisdiction over the Defendants because the causes of action arose in Florida, and/or the transactions and occurrences out of which the causes of action arose took place in Florida, and/or because, as set forth in the attached loan documents, the Defendants have consented to submit themselves to the jurisdiction of this Court.

## PARTIES

4.      On or about August 22, 2018, Florida Community Bank, N.A. ("FCB") and Synovus Bank, a Georgia state member bank ("Synovus") executed Articles of Merger ("Merger Articles").

5.      On or about September 25, 2018, the Corporation Commissioner of the State of Georgia's Department of Bank and Finance approved the Merger Articles.

6.      On or about December 31, 2018, the Secretary of State for the State of Georgia issued a certificate certifying the merger of FCB with and into Synovus resulting in Synovus being the surviving entity.

7.      Accordingly, Synovus is the proper party with standing to commence and prosecute this civil action.

8.      Plaintiff, Synovus Bank, d/b/a Florida Community Bank, N.A., (collectively, the "Bank" or "Plaintiff") is a Georgia banking corporation and maintains it its principal place of business in Columbus, Georgia.  Plaintiff conducts business in the State of Florida.

9.      Defendant, LCH Trading, Inc. ("LCH Trading"), is a Florida corporation and maintains its principal place of business at 1751 NW 129th Avenue, Suite 115, Miami, Florida 33182.

BUCHANAN INGERSOLL & ROONEY PC :: One Biscayne Tower :: Two South Biscayne Boulevard, Suite 1500 ::  Miami, FL 33131-1822 :: T 305 347 4080 :: F 305 347 4089

10.     Defendant, LCH Engine Repair, Inc. ("LCH Engine Repair" and together with LCH Trading, the "Borrowers"), is a Florida corporation and maintains its principal place of business at 1751 NW 129th Avenue, Suite 115, Miami, Florida 33182.

11.     Defendant, Francisco Chirino ("Chirino" and collectively with the "Borrowers," the "LCH Obligors") is an individual who resides at 1542 NW 17th Terrace, Homestead, Florida 33030.

## FACTUAL BACKGROUND

### THE PRIOR LOANS

12.     The Bank made available to the Borrowers a line of credit loan in the amount of Five Million and 00/100 Dollars ($5,000,000.00) (the "Facility A Line of Credit Loan").

13.     The Bank made available to the Borrowers a term loan in the amount of Two Million Five Hundred Thousand and 00/100 Dollars ($2,500,000.00) (the "Facility B Term Loan").

14.     The Bank made available to the Borrowers a line of credit loan in the amount of Two Hundred Fifty Thousand and 00/100 Dollars ($250,000.00) (the "Facility C Line of Credit Loan" and collectively with the Facility A Line of Credit Loan and the Facility B Term Loan, the "Prior Loans").

15.     The Prior Loans were made available pursuant to that certain Loan Agreement dated March 21, 2019 by and among the Bank and the Borrowers (as the same may have been or may be in the future assigned, amended, modified, supplemented and/or restated, collectively, the "Prior Loan Agreement").  A true and correct copy of the Prior Loan Agreement is attached to this Complaint as Exhibit 1.

3

16.     In connection with the Facility A Line of Credit Loan, the Borrowers executed in favor of, and delivered to, the Bank, a Revolving Line of Credit Note dated March 21, 2019 in the principal amount of Five Million and 00/100 Dollars ($5,000,000.00) (the "Facility A Line of Credit Note").  A true and correct copy of the Facility A Line of Credit Note is attached to this Complaint as Exhibit 2.

17.     In connection with the Facility B Term Loan, the Borrowers executed in favor of, and delivered to, the Bank, a Promissory Note dated March 21, 2019 in the principal amount of Two Million Five Hundred Thousand and 00/100 Dollars ($2,500,000.00) (the "Facility B Term Note").  A true and correct copy of the Facility B Term Note is attached to this Complaint as Exhibit 3.

18.     In connection with the Facility C Line of Credit Loan; the Borrowers executed in favor of, and delivered to, the Bank, a Revolving Line of Credit Note dated March 21, 2019 in the principal amount of Two Hundred Fifty Thousand and 00/100 Dollars ($250,000.00) (the "Facility C Line of Credit Note" and collectively with the Facility A Line of Credit Note and the Facility B Term Note as each of the foregoing may have been or may be in the future assigned, amended, modified, supplemented and/or restated, collectively, the "Prior Notes"). A true and correct copy of the Facility C Line of Credit Note is attached to this Complaint as Exhibit 4.

19.     To secure, *inter alia*, the payment and performance of the obligations evidenced by the Prior Notes, the Borrowers executed that certain Security Agreement dated March 21, 2019 (as the same may have been or may be in the future assigned, amended, modified, supplemented and/or restated, collectively, the "Prior Security Agreement") which, among other things, grants the Bank a continuing and unconditional "first priority perfected security interest" in and to the collateral described in section 2.1 of the Prior Security Agreement (collectively, the "Prior Loans Collateral").  A true and correct copy of the Prior Security Agreement is attached to this Complaint as Exhibit 5.

4

20.     The Bank perfected its first priority security interest in the Prior Loans Collateral by filing a UCC-1 Financing Statement with the Florida Secretary of State on March 22, 2019 as Instrument #201908190777 ("March 22nd UCC"), a copy of which is included with the Prior Security Agreement attached to this Complaint as Exhibit 5.

21.     To further induce the Bank to grant the credit accommodations to the Borrowers under the Prior Notes and the Security Agreement, Chirino executed and delivered to Bank that certain Guaranty Agreement dated March 21, 2019 (as the same may have been or may be in the future assigned, amended, modified, supplemented and/or restated, collectively, the "Prior Guaranty").   A true and correct copy of the Prior Guaranty is attached to this Complaint as Exhibit 6.   The Prior Loan Agreement, Prior Notes, Prior Security Agreement, Prior Guaranty and all documents/agreements executed in connection therewith and related to the Prior Loans (as each of the same may have been or may be in the future assigned, amended, modified, supplemented and/or restated) are hereinafter collectively referred to as the "Prior Loan Documents."   Capitalized terms not otherwise defined in this Complaint shall have the meaning given to such terms in the Prior Loan Documents.

22.     Pursuant to the Prior Guaranty, Chirino, executing the same, unconditionally and irrevocably guaranteed to Bank, *inter alia*, the punctual payment when due, whether by lapse of time, by acceleration of maturity, or otherwise, of all principal, interest, fees, late charges, costs, expenses and all sums of money now or hereafter due and owing, or which Borrowers are obligated to pay, pursuant to the Prior Loan Documents.

### THE CONSOLIDATION LOAN

23.     Synovus made available to the Borrowers a loan in the amount of Four Million Six Hundred One Thousand Seven Hundred Twenty and 45/100 Dollars ($4,601,720.45) (the "Consolidation Loan") pursuant to that certain Business Loan Agreement dated September 1, 2020 by and among Synovus and the Borrowers (as the same may have been or may be in the

5

future assigned, amended, modified, supplemented and/or restated, collectively, the "Consolidation Loan Agreement"). A true and correct copy of the Consolidation Loan Agreement is attached to this Complaint as Exhibit 7.

24. In connection with the Consolidation Loan, the Borrowers executed in favor of, and delivered to, Synovus, a Promissory Note dated September 1, 2020 (as the same may have been or may be in the future assigned, amended, modified, supplemented and/or restated, collectively, the "Consolidation Note"). A true and correct copy of the Consolidation Note Agreement is attached to this Complaint as Exhibit 8.

25. The payment and performance obligations evidenced by the Consolidation Note are secured by that certain Commercial Security Agreement executed by the Borrowers on September 1, 2020 (as the same may have been or may be in the future assigned, amended, modified, supplemented and/or restated, collectively, the "Consolidation Security Agreement") which (i) grants Synovus a continuing and unconditional "first priority perfected security interest" in and to the Collateral described therein (collectively, the "Consolidation Loan Collateral") and (ii) is perfected by the March 22nd UCC filed with the Florida Secretary of State. A true and correct copy of the Consolidation Security Agreement is attached to this Complaint as Exhibit 9.

26. The Bank again perfected its first priority security interest in the Consolidation Loan Collateral by filing a UCC-1 Financing Statement with the Florida Secretary of State, a true and correct copy of which is included with the Consolidation Security Agreement attached to this Complaint as Exhibit 9.

6

27.     The Borrowers acknowledged that the Consolidation Note is also secured by the Prior Security Agreement.

28.     To further induce Synovus to grant the credit accommodations to the Borrowers under the Consolidation Note and the Consolidation Security Agreement, Chirino executed and delivered to Synovus that certain Commercial Guaranty dated September 1, 2020 (as the same may have been or may be in the future assigned, amended, modified, supplemented and/or restated, collectively, the "Consolidation Guaranty"). A true and correct copy of the Consolidation Guaranty is attached to this Complaint as Exhibit 10. The Consolidation Loan Agreement, Consolidation Note, Consolidation Security Agreement, Consolidation Guaranty and all documents/agreements executed in connection therewith and related to the Consolidation Loan (as each of the same may have been or may be in the future assigned, amended, modified, supplemented and/or restated) are hereinafter collectively referred to as the "Consolidation Loan Documents." Capitalized terms not otherwise defined in this Complaint shall have the meaning given to such terms in the Consolidation Loan Documents.

29.     Pursuant to the Consolidation Guaranty, Chirino, executing the same, absolutely and unconditionally guaranteed to Synovus, *inter alia*, the full and punctual payment and satisfaction of the Indebtedness of the Borrowers, or any one of them, to Synovus, and the performance and discharge of all Borrowers' obligations under the Consolidation Loan Documents.

### THE SUPPLEMENTAL LOAN

30.     Synovus made available to the Borrowers a loan in the amount of Fifty Thousand and 00/100 Dollars ($50,000.00) (the "Supplemental Loan") pursuant to that certain Business Loan Agreement dated September 25, 2020 by and among Synovus and the Borrowers (as the same may have been or may be in the future assigned, amended, modified, supplemented and/or

BUCHANAN INGERSOLL & ROONEY PC :: One Biscayne Tower :: Two South Biscayne Boulevard, Suite 1500 ::  Miami, FL 33131-1822 :: T 305 347 4080 :: F 305 347 4089

restated, collectively, the "Supplemental Loan Agreement").  A true and correct copy of the Supplemental Loan Agreement is attached to this Complaint as Exhibit 11.

31.     In connection with the Supplemental Loan, the Borrowers executed in favor of, and delivered to, Synovus, a Promissory Note dated September 25, 2020 (as the same may have been or may be in the future assigned, amended, modified, supplemented and/or restated, collectively, the "Supplemental Note").  A true and correct copy of the Supplemental Note is attached to this Complaint as Exhibit 12.

32.     To secure, *inter alia*, the payment and performance of the obligations evidenced by the Supplemental Note, the Borrowers executed that certain Commercial Security Agreement dated September 25, 2020 (as the same may have been or may be in the future assigned, amended, modified, supplemented and/or restated, collectively, the "Supplemental Security Agreement") which, among other things, grants Synovus a continuing and unconditional "first priority perfected security interest" in and to the Collateral described therein (collectively, the "Supplemental Loan Collateral").  A true and correct copy of the Supplemental Security Agreement is attached to this Complaint as Exhibit 13.

33.     The Bank perfected its first priority security interest in the Supplemental Loan Collateral by filing a UCC-1 Financing Statement with the Florida Secretary of State, a true and correct copy of which is included with the Supplemental Security Agreement attached to this Complaint as Exhibit 13.

34.     To further induce Synovus to grant the credit accommodations to the Borrowers under the Supplemental Note and the Supplemental Security Agreement, Chirino executed and delivered to Synovus that certain Commercial Guaranty dated September 25, 2020 (as the same may have been or may be in the future assigned, amended, modified, supplemented and/or restated, collectively, the "Supplemental Guaranty").   A true and correct copy of the

8

Supplemental Guaranty is attached to this Complaint as <u>Exhibit 14</u>.  The Supplemental Loan Agreement, Supplemental Note, Supplemental Security Agreement, Supplemental Guaranty and all documents/agreements executed in connection therewith and related to the Supplemental Loan (as each of the same may have been or may be in the future assigned, amended, modified, supplemented and/or restated) are hereinafter collectively referred to as the "Supplemental Loan Documents."  Capitalized terms not otherwise defined in this Complaint shall have the meaning given to such terms in the Supplemental Loan Documents.

35.     Pursuant to the Supplemental Guaranty, Chirino, executing the same, absolutely and unconditionally guaranteed to Synovus, *inter alia*, the full and punctual payment and satisfaction of the Indebtedness of the Borrowers, or any one of them, to Synovus, and the performance and discharge of all Borrowers' obligations under the Supplemental Loan Documents.

### THE FORBEARANCE AGREEMENT

36.     As of April 2021, the Borrowers' failed to pay the regular monthly payment of accrued unpaid interest due on March 1, 2021 as required by the PAYMENT section of the Consolidation Note which constitutes an Event of Default under the DEFAULT section of the Consolidation Loan Agreement ("March Monetary Default").

37.     As of April 2021, the Borrowers' failed to maintain an Interest Coverage Ratio equal to or in excess of 1.200 to 1.000, measured quarterly on a rolling four quarter basis, for measured quarter ending December 31, 2020 as required by the DEBT SERVICE COVERAGE RATIO REQUIREMENT section of the Consolidation Loan Agreement and the MINIMUM INTEREST COVERAGE SECTION of the Supplemental Loan Agreement which constitutes an Event of Default under the DEFAULT section of the foregoing loan agreements ("December Debt Service Coverage Ratio Default").

BUCHANAN INGERSOLL & ROONEY PC :: One Biscayne Tower :: Two South Biscayne Boulevard, Suite 1500 ::  Miami, FL 33131-1822 :: T 305 347 4080 :: F 305 347 4089

38.     Based on the March Monetary Default and the December Debt Service Coverage Ratio Default, the Bank was entitled to demand immediate payment in full of all obligations owed to the Bank by each of the LCH Obligors referenced in the LCH Loan Documents.[1]

39.     The LCH Obligors requested, and Bank agreed, that the Bank would forbear from taking any further action to collect payment in full on the obligations of the LCH Obligors owed to Bank under the LCH Documents for a prescribed period of time to allow the LCH Obligors to seek and obtain the funds necessary to pay all obligations owed to the Bank under the LCH Loan Documents.

40.     On April 29, 2021, the LCH Obligors and the Bank executed that certain Forbearance and Modification Agreement ("Forbearance Agreement").  A true and correct copy of the Forbearance Agreement is attached to this Complaint as <u>Exhibit 15</u>.  Capitalized terms not otherwise defined in this Complaint shall have the meaning given to such terms in the Forbearance Agreement.

41.     Pursuant to Section 2 of the Forbearance Agreement, the "Effective Date" was defined as the date the Forbearance Agreement was fully executed by the LCH Obligors.

42.     The LCH Obligors executed the Forbearance Agreement on April 29, 2021.

43.      Pursuant to Section 7.a. of the Forbearance Agreement, the Bank agreed to forbear from enforcing its rights under the LCH Loan Documents until that date (the "Forbearance Termination Date") which was defined as the earlier to occur of the following:  (1) June 22, 2021, or (2) the occurrence of an Event of Default under the Forbearance Agreement or the LCH Loan Documents other than the March Monetary Default and the December Debt

---

[1] The Prior Loan Documents, Consolidation Loan Documents and Supplemental Loan Documents are hereinafter collectively referred to as the "LCH Loan Documents."

BUCHANAN INGERSOLL & ROONEY PC :: One Biscayne Tower :: Two South Biscayne Boulevard, Suite 1500 ::  Miami, FL 33131-1822 :: T 305 347 4080 :: F 305 347 4089

Service Coverage Ratio Default.  The time between the Effective Date and Forbearance Termination Date was referred to as the "Forbearance Period."

44.    Pursuant to Section 7.c. of the Forbearance Agreement, the LCH Obligors agreed to pay all obligations owed to the Bank under the LCH Loan Documents in full on the Forbearance Termination Date. TIME WAS OF THE ESSENCE FOR THIS PAYMENT.

45.    The LCH Obligors have not paid the total Indebtedness owed to the Bank as required by Section 7.c. of the Forbearance Agreement.

46.    An Event of Default occurred under the Forbearance Agreement when the LCH Obligors failed to pay all obligations owed to Bank under the LCH Loan Documents on June 22, 2021 (the "Forbearance Default").

47.    The Bank notified the LCH Obligors through a written letter by the Bank's counsel dated June 29, 2021 ("Forbearance Default Letter") of the Forbearance Default and that as a result, the Bank's obligation to forebear from taking any further action to collect payment in full on the obligations of the LCH Obligors owed to Bank under the LCH Loan Documents terminated.  A true and correct copy of the Forbearance Default Letter is attached to the First Amended Complaint as Exhibit 16.

48.    In the Forbearance Default Letter, the Bank reserved the right to take such action at such time as the Bank deemed necessary and appropriate in order to protect its interests, and the Bank expressly reserved all of its rights and remedies and confirmed that the terms and conditions of the LCH Loan Documents remain in full force and effect.

49.    Pursuant Section 8 of the Forbearance Agreement, the Bank temporarily waived the Borrowers' obligation to make regular monthly payments of all accrued unpaid interest when due under the Notes for the period commencing on the Forbearance Agreement's Effective Date

11

through the expiration of the Forbearance Period.  All such regular monthly payment obligations continued to accrue and were due and payable as provided in the Forbearance Agreement.

50.     All conditions precedent to this action were satisfied, waived or occurred.

### THE DEFAULTS

51.     The Borrowers agreed that upon default, the interest rate on the Notes shall be increased to 18.000% per annum based on a year of 360 days ("Interest After Default Rate").

52.     Pursuant to the PAYMENT section of the Consolidation Note, the Borrowers agreed to pay, *inter alia*, regular monthly payments of all accrued unpaid interest due as of each payment date, beginning October 1, 2020, with all subsequent interest payments to be due on the same day of each month after that.

53.     The Borrowers' failure to make any payment when due under the Loans constitutes an Event of Default under the DEFAULT section of the Consolidation Loan Agreement.

54.     The Borrowers' failed to pay regular monthly payments of accrued unpaid interest due on March 1, 2021, April 1, 2021, May 1, 2021, June 1, 2021, July 1, 2021 and August 1, 2021 as required by the PAYMENT section of the Consolidation Note which constitutes an Event of Default under the DEFAULT section of the Consolidation Loan Agreement (collectively, the "Monetary Default").

55.     Pursuant to the AFFIRMATIVE COVENANTS section of the Consolidation Loan Agreement and the Supplemental Loan Agreement, the Borrowers covenanted and agreed with the Bank that, so long as the foregoing loan agreements remain in effect, the Borrowers will furnish to the Bank, as soon as available, but in no event later than 45 days after the end of each

BUCHANAN INGERSOLL & ROONEY PC :: One Biscayne Tower :: Two South Biscayne Boulevard, Suite 1500 ::  Miami, FL 33131-1822 :: T 305 347 4080 :: F 305 347 4089

fiscal quarter, the Borrowers' balance sheet and profit and loss statement for the period ended, prepared by the Borrowers (collectively, the "Interim Statements").

56.     The Borrowers' failure to comply with or to perform any other term, obligation, covenant or condition contained in the Consolidation Loan Agreement and the Supplemental Loan Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between the Bank and the Borrowers constitutes an Event of Default under the DEFAULT section of the Consolidation Loan Agreement and the Supplemental Loan Agreement.

57.     The Borrowers' failed to furnish to the Bank the Borrowers' Interim Statements after the fiscal quarter ending June 30, 2021 as required by the AFFIRMATIVE COVENANTS section of the Consolidation Loan Agreement and the Supplemental Loan Agreement which constitutes an Event of Default under the DEFAULT section of the foregoing loan agreements (collectively "Interim Financial Statement Default").

58.     Pursuant to the AFFIRMATIVE COVENANTS section of the Consolidation Loan Agreement and the Supplemental Loan Agreement, the Borrowers covenanted and agreed with the Bank that, so long as the foregoing loan agreements remain in effect, the Borrowers will comply with all terms and conditions of all other agreements, whether now or hereafter existing, between the Borrowers and any third party.

59.     LCH Trading failed to comply with its obligations under that certain lease dated February 17, 2017 entered into with AMB Condina Beacon Lakes, LLC for that certain premises located at 1751 NW 129th Avenue, Suite 115, Miami, FL 33182 as required by the AFFIRMATIVE COVENANTS section of the Consolidation Loan Agreement and the Supplemental Loan Agreement which constitutes an Event of Default under the DEFAULT section of the foregoing loan agreements ("Lease Default").

BUCHANAN INGERSOLL & ROONEY PC :: One Biscayne Tower :: Two South Biscayne Boulevard, Suite 1500 ::  Miami, FL 33131-1822 :: T 305 347 4080 :: F 305 347 4089

60.     Pursuant to the NEGATIVE COVENANTS section of the Consolidation Loan Agreement and the Supplemental Loan Agreement, the Borrowers covenanted and agreed with the Bank that while the foregoing loan agreements are in effect, the Borrowers shall not, without the prior written consent of the Bank, *inter alia*, loan, invest in or advance money or assets to any other person, enterprise or entity.

61.     The Borrowers provided a loan in the amount of $12,250.00 to DMS Aircraft Services, Inc., without the prior written consent of the Bank, during the first quarter of 2021 in violation of the NEGATIVE COVENANTS section of the Consolidation Loan Agreement and the Supplemental Loan Agreement which constitutes an Event of Default under the DEFAULT section of the foregoing loan agreements (collectively "Prohibited Loan Default").

62.     As a result of the defaults set forth herein a material adverse change occurred in the Borrowers' financial condition which caused the Bank to believe that the prospect of payment or performance of the Loans is impaired which constitutes an Event of Default under the DEFAULT section of the Consolidation Loan Agreement and the Supplemental Loan Agreement ("MAC Default").

63.     Pursuant to the QUARTERLY REPORTING REQUIREMENT section of the Consolidation Loan Agreement and the Supplemental Loan Agreement, no later than forty five (45) days after each quarter during the life of the Loans evidenced by the Notes, the Borrowers' agreed to provide the Bank with a detailed report of all of the (i) accounts payable of the Borrowers as of the final day of the prior quarter, (ii) accounts receivable of the Borrowers as of the final day of the prior quarter, (iii) inventory listing of the Borrowers as of the final day of the prior quarter and (iv) a borrowing base certificate in a form acceptable to the Bank as of the final day of the prior quarter, all certified by the Borrowers to be complete, correct, and accurate (collectively, the "Quarterly Reports").

BUCHANAN INGERSOLL & ROONEY PC :: One Biscayne Tower :: Two South Biscayne Boulevard, Suite 1500 ::  Miami, FL 33131-1822 :: T 305 347 4080 :: F 305 347 4089

64.     The Borrowers' failed to provide to the Bank the Quarterly Reports after the fiscal quarter ending June 30, 2021 as required by the QUARTERLY REPORTING REQUIREMENT section of the Consolidation Loan Agreement and the Supplemental Loan Agreement which constitutes an Event of Default under the DEFAULT section of the foregoing loan agreements (collectively "Quarterly Reporting Default").

65.     Pursuant to the DEBT SERVICE COVERAGE RATIO REQUIREMENT section of the Consolidation Loan Agreement and the MINIMUM INTEREST COVERAGE SECTION of the Supplemental Loan Agreement, until the Loans evidenced by the Notes have been paid in full, the Borrowers agreed to at all times maintain an Interest Coverage Ratio equal to or in excess of 1.200 to 1.000, and defined as the Borrowers' earnings before interest, taxes, depreciation and amortization for each reporting period divided by the Borrowers' interest expenses for each reporting period (collectively, the "Interest Coverage Ratio"). The Borrowers agreed that the Interest Coverage Ratio shall be measured quarterly on a rolling four quarter basis.

66.     The Borrowers' failed to maintain an Interest Coverage Ratio for measured quarter ending March 31, 2021 as required by the DEBT SERVICE COVERAGE RATIO REQUIREMENT section of the Consolidation Loan Agreement and the MINIMUM INTEREST COVERAGE SECTION of the Supplemental Loan Agreement, and the Borrowers' failed to provide the Bank with a covenant compliance certificate in connection with the same all of which constitutes an Event of Default under the DEFAULT section of the foregoing loan agreements (collectively "Interest Coverage Ratio Default" and collectively with the Monetary Default, Interim Financial Statement Default, Lease Default, Prohibited Loan Default, MAC Default, and the Quarterly Reporting Default, the "Existing Events of Default").

67.     The Bank notified the LCH Obligors through a written letter by Bank's counsel dated August 9, 2021 ("Default and Demand Letter") of the Existing Events of Default and that

15

as a result, the Bank declared the unpaid principal and all accrued unpaid interest under the LCH Loan Documents accelerated and immediately due and payable.  A true and correct copy of the Default and Demand Letter is attached to this Complaint as Exhibit 17.

68.     In the Default and Demand Letter, demand was made on the LCH Obligors to immediately pay all unpaid principal, accrued interest, late charges, relief fees, inventory appraisal fee and attorneys' fees and costs due under the Notes (collectively, the "LCH Obligors Default Amount").

69.     In the Default and Demand Letter, the Bank instructed that given the Existing Events of Default and from the date of the Default and Demand Letter, neither the Borrowers nor any other party is permitted to (i) use in any manner whatsoever any property, including, without limitation, the inventory and equipment, described as Collateral in the Security Agreements[2] (collectively, the "LCH Collateral") which secures the payment and performance of the Borrowers' obligations owed to the Bank under the LCH Loan Documents; or (ii) sell, offer to sell, or otherwise transfer or dispose of the LCH Collateral.

70.     In the Default and Demand Letter, the Bank instructed the Borrowers to immediately prepare and assemble all of the LCH Collateral such that possession of the same can be turned over to the Bank, or the Bank's agent.

71.     Bank believes, and therefore avers, that additional defaults exist under the LCH Loan Documents and therefore reserves its rights as to the same in all respects.

72.     To date, despite demand, the LCH Obligors have failed to pay the LCH Obligors Default Amount and have therefore failed to satisfy their obligations set forth in LCH Loan Documents.

---

[2] The Prior Security Agreement, Consolidation Security Agreement and Supplemental Security Agreement are hereinafter collectively referred to as the "Security Agreements."

16

73.     Upon information and belief and based on the Forbearance Agreement,[3] the LCH Obligors have no valid defenses, and have waived all of the same, for failing to fulfill their obligations set forth in the Loan Documents.

## CHOICE OF LAW, CHOICE OF VENUE, JURISDICTION AND ATTORNEYS' FEES

74.     Bank has a principal place of business in Columbus, Georgia, however, the Bank conducts business in the State of Florida.

75.     The LCH Loan Documents expressly provide that they will be delivered and accepted in and shall be deemed to be a contract made under and governed by the internal laws of the State of Florida applicable to contracts made and to be performed entirely within such state, without regard to conflict of law principles.

76.     Pursuant to the LCH Loan Documents, the LCH Obligors, each executing these documents, have expressly and irrevocably waived any right to a trial by jury in any action or proceeding to enforce or defend any rights under the LCH Loan Documents or with respect to the collateral securing the obligations thereunder.

77.     Pursuant to the LCH Loan Documents, the LCH Obligors, each executing these documents, have also expressly and irrevocably submitted to the jurisdiction of the courts of Miami-Dade County, State of Florida and the United States District Court for the Southern District of Florida for the purpose of any litigation based on, arising out of, under or in connection with the LCH Loan Documents.

78.     Pursuant to the LCH Loan Documents, the LCH Obligors, each executing these documents, have agreed to pay or reimburse the Bank for all reasonable costs, fees and expenses

---

[3] By executing the Forbearance Agreement, the LCH Obligors each withdrew, with prejudice, any claim, counterclaim, set off, defense, or affirmative defense that they may have in connection with the LCH Loan Documents or the Forbearance Agreement.

17

incurred by Bank or for which the Bank becomes obligated in connection with the enforcement of the LCH Loan Documents, including reasonable attorneys' fees.

79.     The Bank has retained the law firm of Buchanan Ingersoll & Rooney P.C. to enforce the Bank's rights and remedies under the LCH Loan Documents and the Bank is obligated to pay this law firm's attorneys a reasonable fee for their services.

## COUNT I – REPLEVIN FOR LCH COLLATERAL
### (Bank v. LCH Trading and LCH Engine Repair)

80.     Plaintiff incorporates the allegations of the preceding paragraphs 1-79 of the Complaint as if fully restated herein.

81.     Bank has a valid and first priority perfected security interest in the LCH Collateral.

82.     Pursuant to the Security Agreements, if an Event of Default occurs, at any time thereafter, the Bank shall have all the rights of a secured party under the Florida UCC.

83.     Pursuant to the Security Agreements, if an Event of Default occurs, at any time thereafter, the Bank may require the Borrowers to deliver to the Bank all or any portion of the LCH Collateral and any and all certificates of title and other documents relating to the LCH Collateral.

84.     Pursuant to the Security Agreements, if an Event of Default occurs, at any time thereafter, the Bank may require the Borrowers to assemble the LCH Collateral and make it available to the Bank at a place to be designated by the Bank.

85.     Pursuant to the Security Agreements, if an Event of Default occurs, at any time thereafter, the Bank has the full power to enter upon the property of the Borrowers to take possession of and remove the LCH Collateral.

18

86.     Pursuant to the Security Agreements, if an Event of Default occurs, at any time thereafter, the Bank may sell, lease, transfer, or otherwise deal with the LCH Collateral or proceeds thereof in the Bank's own name of that of the Borrowers.

87.     Pursuant to the Security Agreements, if an Event of Default occurs, at any time thereafter, the Bank may sell the LCH Collateral at public auction or private sale.

88.     Pursuant to the Security Agreements, if an Event of Default occurs, at any time thereafter, the Bank, either itself or through a receiver, may collect the payments, rents, income, and revenues from the LCH Collateral.

89.     Pursuant to the Security Agreements, if an Event of Default occurs, at any time thereafter, if the Bank chooses to sell any or all of the LCH Collateral, the Bank may obtain a judgment against the LCH Obligors for any deficiency remaining on the Indebtedness due to the Bank after application of all amounts received from the exercise of the rights provided in the Security Agreements.

90.     The LCH Obligors defaulted on their obligations under the LCH Loan Documents by virtue of the Existing Events of Default averred above.

91.     Bank is entitled to take possession of the LCH Collateral and to sell any or all of the same.

92.     Bank is entitled to require the Borrowers to assemble the LCH Collateral and make such collateral available to the Bank at a place or places to be designated by the Bank.

93.     Despite Bank's instruction, the Borrowers have failed and refused to prepare and assemble all of the LCH Collateral such that possession of the same can be turned over to the Bank, or the Bank's agent.

BUCHANAN INGERSOLL & ROONEY PC :: One Biscayne Tower :: Two South Biscayne Boulevard, Suite 1500 ::  Miami, FL 33131-1822 :: T 305 347 4080 :: F 305 347 4089

94.     Should the Bank take possession of the LCH Collateral, as permitted under the LCH Loan Documents upon the Existing Events of Default, the Bank may sell the LCH Collateral in accordance with state and federal law, including, without limitation, the Florida UCC, and apply the sale proceeds to the debt represented by the LCH Loan Documents or any judgment against the LCH Obligors entered in this action.  Before the LCH Collateral can be sold, however, it may be necessary for it to be restored to good order and repair.  The expenses the Bank may incur to do so may be added to the debt owed by the LCH Obligors as provided in the LCH Loan Documents.

95.     If the sale proceeds are insufficient to cover the entire debt owed by the LCH Obligors the Bank will seek a deficiency judgment against all such obligors.

96.     The Bank has performed all conditions precedent under the LCH Loan Documents.

WHEREFORE, Synovus Bank, d/b/a Florida Community Bank, N.A., prays that this Court (1) enter a judgment in the above-captioned action that the Bank has a valid, perfected security interest in the LCH Collateral, senior and superior to any lien or security interest of any other person; (2) enter a judgment in the above-captioned action that the Bank is entitled to take possession of the LCH Collateral; (3) enter an order directing the Borrowers, or any party in possession of the LCH Collateral, to immediately surrender possession of the LCH Collateral to the Bank or its duly authorized representative; (4) enter an order authorizing the Bank, or its duly authorized representative, to enter upon the property of the Borrowers and by any means necessary to take possession of and remove the LCH Collateral (5) enter an order that the Bank shall have the right to sell the LCH Collateral at public auction or private sale pursuant to Florida's UCC as determined by the Bank (i.e., "as-is" condition, auction, private sale, etc.), and the Bank shall have no obligation to incur the costs and expense of repairing the LCH Collateral prior to the public auction or private sale or otherwise, provided that such sale is conducted in

BUCHANAN INGERSOLL & ROONEY PC :: One Biscayne Tower :: Two South Biscayne Boulevard, Suite 1500 ::  Miami, FL 33131-1822 :: T 305 347 4080 :: F 305 347 4089

accordance with Florida's UCC and that the net proceeds shall be applied to the amounts owing under said judgment; (6) enter an order permitting the Bank to directly notify any lessee or parties obligated on any of the LCH Collateral of the Bank's security interest therein and to thereafter collect any such payments, rents, income, and revenues due from such lessee or obligor; and (7) grant such other relief as is just and equitable under the circumstances.

## COUNT II - BREACH OF CONTRACT/LCH LOAN DOCUMENTS
### (Bank v. LCH Trading and LCH Engine Repair)

97.     Plaintiff incorporates the allegations of the preceding paragraphs 1-79 of the Complaint as if fully restated herein.

98.     As averred above, the Borrowers defaulted on their obligations under the LCH Loan Documents by virtue of certain of the Existing Events of Default.

99.     Bank has suffered damages as a result of the Borrowers' breach of the LCH Loan Documents, including, without limitation, the LCH Obligors Default Amount and such other exact amounts as may be proven at trial.

100.     The LCH Loan Documents provide that the Borrowers agree to pay upon demand all of the Bank's costs and expenses, including the Bank's reasonable attorneys' fees and the Bank's legal expenses, incurred in connection with the enforcement of the LCH Loan Documents and the Bank may hire or pay someone else to help enforce the LCH Loan Documents and the Borrowers shall pay the costs and expenses of such enforcement.  The foregoing costs and expenses include the Bank's reasonable attorneys' fees and legal expenses.

101.     Interest continues to accrue on the LCH Obligors Default Amount at the Interest After Default Rate.

BUCHANAN INGERSOLL & ROONEY PC :: One Biscayne Tower :: Two South Biscayne Boulevard, Suite 1500 ::  Miami, FL 33131-1822 :: T 305 347 4080 :: F 305 347 4089

102.    The Bank's costs and expenses including the Bank's reasonable attorneys' fees and legal expenses incurred in connection with the enforcement of the LCH Loan Documents, continue to accrue.

103.    Despite Bank's demand for payment, the Borrowers have failed and refused to pay to the Bank the amounts due the Bank under the LCH Loan Documents.

104.    Should the Bank take possession of the LCH Collateral, as permitted under the LCH Loan Documents upon the Existing Events of Default, the Bank may sell the LCH Collateral in accordance with state and federal law, including, without limitation, the Florida UCC, and apply the sale proceeds to the debt represented by the LCH Loan Documents or any judgment against the Borrowers entered in this action.  Before the LCH Collateral can be sold, however, it may be necessary for it to be restored to good order and repair.  The expenses the Bank may incur to do so may be added to the debt owed by the Borrowers as provided in the LCH Loan Documents.

105.    If the sale proceeds are insufficient to cover the entire debt owed by the Borrowers, the Bank will seek a deficiency judgment against them.

106.    The Bank has performed all conditions precedent under the LCH Loan Documents.

WHEREFORE, Synovus Bank, d/b/a Florida Community Bank, N.A. prays that this Court enter a judgment in the above-captioned action that (1) the Bank has a valid, perfected security interest in the LCH Collateral, senior and superior to any lien or security interest of any other person; (2) the Bank is entitled to judgment in its favor and against the Borrowers under the LCH Loan Documents in the amount proven at trial, *plus* pre-judgment interest, and post judgment interest on any judgment accruing at the Interest After Default Rate from and after

BUCHANAN INGERSOLL & ROONEY PC :: One Biscayne Tower :: Two South Biscayne Boulevard, Suite 1500 ::  Miami, FL 33131-1822 :: T 305 347 4080 :: F 305 347 4089

August 9, 2021, *plus* accruing costs and expenses including the Bank's reasonable attorneys' fees and legal expenses incurred in connection with the enforcement of the LCH Loan Documents accruing after August 9, 2021; (3) the Bank shall have the right to sell the LCH Collateral at public auction or private sale pursuant to Florida's UCC as determined by the Bank (i.e., "as-is" condition, auction, private sale, etc.), and the Bank shall have no obligation to incur the costs and expense of repairing the LCH Collateral prior to the public auction or private sale or otherwise, provided that such sale is conducted in accordance with Florida's UCC and that the net proceeds shall be applied to the amounts owing under said judgment against the Borrowers; (4) the Bank is entitled to future costs and attorneys' fees in connection with the repossession, storage, repair, maintenance, and/or sale of the LCH Collateral; and (5) the Bank is entitled to such other relief as is just and equitable under the circumstances.

<u>**COUNT III – ACTION ON GUARANTY**</u>[4]
<u>**(Bank v. Chirino)**</u>

107.    Plaintiff incorporates the allegations of the preceding paragraphs 1-79 of the Complaint as if fully restated herein.

108.    As averred above, Chirino defaulted on his obligations under the LCH Loan Documents by virtue of certain of the Existing Events of Default.

109.    Chirino has failed to meet his obligations under the Guaranty by, *inter alia*, failing to pay the LCH Obligors Default Amount.

---

[4] The Prior Guaranty, Consolidation Guaranty and Supplemental Guaranty are hereinafter collectively referred to as the "Guaranty."

BUCHANAN INGERSOLL & ROONEY PC :: One Biscayne Tower :: Two South Biscayne Boulevard, Suite 1500 ::  Miami, FL 33131-1822 :: T 305 347 4080 :: F 305 347 4089

110.    Bank has suffered damages as a result of Chirino's breach of the Guaranty, including, without limitation, the LCH Obligors Default Amount and such other exact amounts as may be proven at trial.

111.    The Guaranty provides that Chirino agrees to pay upon demand all of the Bank's costs and expenses, including the Bank's reasonable attorneys' fees and the Bank's legal expenses, incurred in connection with the enforcement of the Guaranty and the Bank may hire or pay someone else to help enforce the Guaranty and the Borrowers shall pay the costs and expenses of such enforcement.  The foregoing costs and expenses include the Bank's reasonable attorneys' fees and legal expenses.

112.    Interest continues to accrue on the LCH Obligors Default Amount at the Interest After Default Rate.

113.    The Bank's costs and expenses including the Bank's reasonable attorneys' fees and legal expenses incurred in connection with the enforcement of the Guaranty, continue to accrue.

114.    Despite Bank's demand for payment, Chirino has failed and refused to pay to the Bank the amounts due Bank under the Guaranty.

115.    Should the Bank take possession of the LCH Collateral, as permitted under the LCH Loan Documents upon the Existing Events of Default, the Bank may sell the LCH Collateral in accordance with state and federal law, including, without limitation, the Florida UCC, and apply the sale proceeds to the debt represented by the LCH Loan Documents or any judgment against Chirino entered in this action.  Before the LCH Collateral can be sold, however, it may be necessary for it to be restored to good order and repair.  The expenses the Bank may incur to do so may be added to the debt owed by Chirino as provided in the Guaranty.

BUCHANAN INGERSOLL & ROONEY PC :: One Biscayne Tower :: Two South Biscayne Boulevard, Suite 1500 ::  Miami, FL 33131-1822 :: T 305 347 4080 :: F 305 347 4089

116.     If the sale proceeds are insufficient to cover the entire debt owed by Chirino, the Bank will seek a deficiency judgment against Chirino.

117.     The Bank has performed all conditions precedent under the Guaranty.

WHEREFORE, Synovus Bank, d/b/a Florida Community Bank, N.A. prays that this Court enter a judgment in the above-captioned action that (1) the Bank has a valid, perfected security interest in the LCH Collateral, senior and superior to any lien or security interest of any other person; (2) the Bank is entitled to judgment in its favor and against Chirino under the Guaranty in the amount proven at trial, *plus* pre-judgment interest, and post judgment interest on any judgment accruing at the Interest After Default Rate from and after August 9, 2021, *plus* accruing costs and expenses including the Bank's reasonable attorneys' fees and legal expenses incurred in connection with the enforcement of the Guaranty accruing after August 9, 2021; (3) the Bank shall have the right to sell the LCH Collateral at public auction or private sale pursuant to Florida's UCC as determined by the Bank (i.e., "as-is" condition, auction, private sale, etc.), and the Bank shall have no obligation to incur the costs and expense of repairing the LCH Collateral prior to the public auction or private sale or otherwise, provided that such sale is conducted in accordance with Florida's UCC and that the net proceeds shall be applied to the amounts owing under said judgment against Chirino; (4) the Bank is entitled to future costs and attorneys' fees in connection with the repossession, storage, repair, maintenance, and/or sale of the LCH Collateral; and (5) the Bank is entitled to such other relief as is just and equitable under the circumstances.

BUCHANAN INGERSOLL & ROONEY PC :: One Biscayne Tower :: Two South Biscayne Boulevard, Suite 1500 ::  Miami, FL 33131-1822 :: T 305 347 4080 :: F 305 347 4089

## COUNT IV - BREACH OF CONTRACT/FORBEARANCE AGREEMENT
### (Bank v. LCH Trading, LCH Engine Repair and Chirino)

118.    Plaintiff incorporates the allegations of the preceding paragraphs 1-79 of the Complaint as if fully restated herein.

119.    As averred above, the LCH Obligors defaulted on their obligations under the Forbearance Agreement by virtue of the Forbearance Default.

120.    Bank has suffered damages as a result of the LCH Obligors' breach of the Forbearance Agreement, including, without limitation, the LCH Obligors Default Amount and such other exact amounts as may be proven at trial.

121.    The Forbearance Agreement provides that the LCH Obligors will be liable for all losses, damages, costs and expenses, including reasonable attorney's fees, incurred by the Bank as a result of the defaults thereunder.

122.    Interest continues to accrue on the LCH Obligors Default Amount at the Interest After Default Rate.

123.    The Bank's costs and expenses including the Bank's reasonable attorneys' fees and legal expenses incurred in connection with the enforcement of the Forbearance Agreement, continue to accrue.

124.    Despite Bank's demand for payment, the LCH Obligors have failed and refused to pay to the Bank the amounts due Bank under the LCH Loan Documents.

125.    The Bank has performed all conditions precedent under the Forbearance Agreement.

BUCHANAN INGERSOLL & ROONEY PC :: One Biscayne Tower :: Two South Biscayne Boulevard, Suite 1500 ::  Miami, FL 33131-1822 :: T 305 347 4080 :: F 305 347 4089

WHEREFORE, Synovus Bank, d/b/a Florida Community Bank, N.A. prays that this Court enter a judgment in the above-captioned action that (1) the Bank is entitled to judgment in its favor and against the LCH Obligors under the Forbearance Agreement in the amount proven at trial, *plus* pre-judgment interest, and post judgment interest on any judgment accruing at the Interest After Default Rate from and after August 9, 2021, *plus* accruing costs and expenses including the Bank's reasonable attorneys' fees and legal expenses incurred in connection with the enforcement of the LCH Loan Documents accruing after August 9, 2021; and (2) the Bank is entitled to such other relief as is just and equitable under the circumstances.

Dated:  August 19, 2021                    Respectfully submitted,


By: */s/ Nicole Grimal Helmstetter*
   Nicole Grimal Helmstetter
   Florida Bar No. 86937
   Email: Nicole.helmstetter@bipc.com
   BUCHANAN INGERSOLL & ROONEY PC
   Two South Biscayne Boulevard, Suite 1500
   Miami, FL 33131-1822
   Telephone: (305) 347-4080
   Facsimile:  (305) 347-4089


   *Counsel for Synovus Bank, d/b/a Florida*
   *Community Bank, N.A.*

4825-8749-1829, v. 4

BUCHANAN INGERSOLL & ROONEY PC :: One Biscayne Tower :: Two South Biscayne Boulevard, Suite 1500 ::  Miami, FL 33131-1822 :: T 305 347 4080 :: F 305 347 4089